**DLA PIPER LLP (US)**
DAVID B. FARKAS (SBN 257137)
*david.farkas@us.dlapiper.com*
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067-4735
Telephone: 310.595.3000

**DLA PIPER LLP (US)**
OLIVER M. KIEFER (SBN 332830)
*oliver.kiefer@us.dlapiper.com*
ALBERTO J. CORONA (SBN 339906)
*alberto.corona@us.dlapiper.com*
MATT DANAHER (SBN 351055)
*matt.danaher@us.dlapiper.com*
4365 Executive Drive, Suite 1100
San Diego, California 92121-2133
Tel: 619.699.2781

*Attorneys for Defendants*
*AMADEUS HOSPITALITY, INC.*
*d/b/a TRAVELCLICK*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MADELINE DION, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OXFORD HOTELS AND RESORTS, LLC d/b/a THE GODFREY HOTEL HOLLYWOOD and AMADEUS HOSPITALITY, INC. d/b/a TRAVELCLICK,<br><br>Defendants. | Case No. 2:24-cv-06562-AB-PD<br><br>(*Assigned to Hon. Andre Birotte Jr.*)<br><br>**DEFENDANT AMADEUS HOSPITALITY, INC.'S AND DEFENDANT OXFORD HOTELS AND RESORTS LLC'S JOINT NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: February 28, 2025<br>Time: 10:00 a.m.<br>Judge: Hon. Andre Birotte Jr.<br>Courtroom: Courtroom 7B, First Street Courthouse, 350 W. 1st Street, 10th Fl., Los Angeles, CA 90012<br><br>Action Filed: August 2, 2024<br>Trial Date: None Set |

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE THAT on February 28, 2025, at 10 a.m., or as soon thereafter as this matter may be heard by the Honorable Andre Birotte Jr. in Courtroom 7B of the above-entitled Court located at First Street Courthouse, 350 W. 1st Street, 7th Floor, Los Angeles, California 90012, Defendant AMADEUS HOSPITALITY, INC. d/b/a TRAVELCLICK ("Amadeus") will, and hereby does, move this Court for an order dismissing with prejudice Plaintiff MADELINE DION's Complaint ("Plaintiff" or "Dion") in its entirety, and each claim asserted therein.

Amadeus brings this motion pursuant to Federal Rules of Civil Procedure ("FRCP") 12(b)(2) and 12(b)(6) because Dion has not carried her burden to establish jurisdiction and fails to state a claim for relief. This motion is based on this Notice of Motion and Motion to Dismiss, the supporting Memorandum of Points and Authorities, the Declaration of David B. Farkas, and all pleadings, arguments, and matters before the Court.

Defendant OXFORD HOTELS AND RESORTS LLC d/b/a THE GODFREY HOTEL HOLLYWOOD joins in this motion under FRCP 12(b)(6).

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on November 11, 2024.

Dated: November 15, 2024

DLA PIPER LLP (US)

By: /s/ David B. Farkas
DAVID B. FARKAS
OLIVER M. KIEFER
ALBERTO J. CORONA
MATT DANAHER

*Counsel for Defendant*
*AMADEUS HOSPITALITY, INC.*
*d/b/a TRAVELCLICK*

Dated: November 15, 2024

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

By: /s/ David A. Yudelson
DAVID A YUDELSON

Counsel for Defendant OXFORD HOTELS AND RESORTS, LLC f/b/a THE GODFREY HOTEL HOLLYWOOD

TABLE OF CONTENTS

**Page**

I. Statement of Facts ..... 3
- A. The Godfrey Website ..... 3
- B. Facebook's Terms of Service ..... 4
- C. Dion's Interaction with the Website ..... 5

II. Legal Standards ..... 6
- A. Rule 12(b)(2): Lack of Personal Jurisdiction ..... 6
- B. Rule 12(b)(6): Failure to State a Claim ..... 6

III. This Court Does Not Have Personal Jurisdiction Over Amadeus. ..... 7

IV. Dion Consented to the "Precise Conduct" at Issue Here. ..... 11

V. Dion Fails to State a Claim Under CIPA. ..... 13
- A. Dion's Section 631 Claim Fails ..... 13
  - 1. Dion's allegations related to the first three clauses fall outside the scope of the statute. ..... 14
  - 2. A claim under the fourth clause of section 631 fails because Dion cannot plead requisite intent or overcome her own consent. ..... 15
- B. Dion Lacked an Expectation of Privacy for Her Section 632 Claim. ..... 19
- C. Dion's Claim is Time-Barred ..... 22

VI. Conclusion ..... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.S. v. SelectQuote Ins. Servs.*,
No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850 (S.D. Cal. Aug. 19, 2024) ........ 7

*AMA Multimedia, LLC v. Wanat*,
970 F.3d 1201 (9th Cir. 2020) ........ 8, 9, 10

*Anderson v. Brouwer*,
99 Cal. App. 3d 176 (1979) ........ 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 6, 18

*B.K. v. Desert Care Network*,
No. 223CV05021SPGPDX, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 6

*Bonds v. Nicoletti Oil, Inc.*,
No. CV-F-07-1600, 2008 WL 2233511 (E.D. Cal. May 28, 2008) ........ 23

*Brayton Purcell LLP v. Recordon & Recordon*,
606 F.3d 1124 (9th Cir. 2011) ........ 8

*Briskin v. Shopify, Inc.*,
87 F.4th 404 (9th Cir. 2023), *op. vacated and pet. for reh'g en banc granted*, 101 F.4th 706 (9th Cir. 2024). ........ 7

*Bristol-Myers Squibb Co. v. Superior Court*,
582 U.S. 255 (2017) ........ 8, 11

*Brodsky v. Apple Inc.*,
No. 19-CV-00712-LHK, 2019 WL 4141936 (N.D. Cal. Aug. 30, 2019) ........ 22

*Cal. Soc'y of Anesthesiologists v. Brown*,
204 Cal. App. 4th 390 (2012) ........ 15

*Chione v. Medtronic, Inc.*,
No. 14-CV-01043-BAS RBB, 2015 WL 2151889 (S.D. Cal. May 7, 2015) ........ 23

*Crawford-Hall v. United States*,
No. 2:17-CV-1616-SVW-AFM, 2018 WL 5816117 (C.D. Cal. May 31, 2018) ........ 22

*Daniels-Hall v. National Educ. Ass'n*,
629 F.3d 992 (9th Cir. 2010) ........ 6

*Davis v. HSBC Bank*,
691 F.3d 1152 (9th Cir. 2012) ........ 6

*Dieckmann v. Superior Court*,
175 Cal. App. 3d 345 (1985) ........ 21

*Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*,
No. SACV1500137JLSRNBX, 2015 WL 13273308 (C.D. Cal. July 29, 2015). ........ 16

*Fox v. Ethicon Endo-Surgery, Inc.*,
35 Cal. 4th 797 (2005) ........ 22, 23

*Garcia v. Enter. Holdings, Inc.*,
78 F. Supp. 3d 1125 (N.D. Cal. 2015) ........ 12

*Global Commodities Trading Grp. Inc. v. Beneficio de Arroz Choloma, S.A.*,
972 F.3d 1101 (9th Cir. 2020) ........ 11

*In re Google Assistant Privacy Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) ........ 14

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) ........ 2, 14

*Heiting v. Marriott Int'l, Inc.*,
No. 2:23-cv-10822-JLS-MAA, 2024 WL 3751276 (C.D. Cal. Aug. 5, 2024) ........ 11

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ........ 22

*Impossible Foods, Inc. v. Impossible X LLC*,
80 F.4th 1079 (9th Cir. 2023) ........ 7, 8

*Knievel v. ESPN*,
393 F.3d 1068 (9th Cir. 2005) ........ 7

*Leon v. County of San Diego*,
115 F. Supp. 2d 1197 (S.D. Cal. 2000) ........................................................ 6

*Licea v. Caraway Home Inc.*,
655 F. Supp. 3d 954 (C.D. Cal. 2023) ........................................................ 9, 10

*Lozano v. City of Los Angeles*,
73 Cal. App. 5th 711 (2022) ........................................................ 15, 19

*Massie v. Gen. Motors Co.*,
No. 1:20-CV-01560-JLT, 2021 WL 2142728 (E.D. Cal. May 26, 2021) ...... 9, 10

*Mastel v. Miniclip SA*,
549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........................................................ 13, 14, 18

*Matus v. Premium Nutraceuticals, LLC*,
715 F. App'x 662 (9th Cir. 2018) ........................................................ 10

*Mavrix Photo, Inc. v. Brand Techs, Inc.*,
647 F.3d 1218 (9th Cir. 2011) ........................................................ 8, 9, 10

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ........................................................ 16, 20

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........................................................ 9

*Navarro v. Block*,
250 F.3d 729 (9th Cir. 2001) ........................................................ 6

*People v. Buchanan*,
26 Cal. App. 3d 274 (1972) ........................................................ 15, 16

*People v. Stipo*,
195 Cal. App. 4th 664 (2011) ........................................................ 20

*People v. Superior Court (Smith)*,
70 Cal. 2d 123 (1969) ........................................................ 15, 16, 17

*Plumlee v. Pfizer*,
Inc., 2014 WL 695024 (N.D. Cal. Feb. 21, 2014) ........................................................ 23

*Rodriguez v. Google LLC*,
No. 20-CV-4688, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ........................ 19

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .......... 6, 7

*Sher v. Johnson*, 911 F.2d 1357 (9th Cir. 1990) .......... 6

*Silver v. Stripe, Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) .......... 17

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), *aff'd* 745 F. Appx. 8 (9th Cir. 2018) 2, 11

*Smith v. Yeti Coolers, LLC*, No. 24-cv-01703, 2024 WL 4539578 (N.D. Cal. Oct. 21, 2024) .......... 18

*Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732 (N.D. Cal. 2023) .......... 14, 20, 21

*Tavernetti v. Superior Court*, 22 Cal. 3d 187 (1978) .......... 13, 15

*Vartanian v. VW Credit, Inc.*, No. 2:11-CV-10776-SVW-RZ, 2012 WL 12326334 (C.D. Cal. Feb. 22, 2012) .......... 19

*Voltage Pictures, LLC v. Gussi S.A. de CV*, 92 F.4th 815 (9th Cir. 2024) .......... 6

*Walden v. Fiore*, 571 U.S. 277 (2014) .......... 7, 8, 10

**Statutes**

Cal. Civ. Code § 53.5 .......... 13, 19, 20, 21

Cal. Civ. Code § 53.5(i) .......... 21

Cal. Civ. Code § 53.5(a) .......... 20

Cal. Civ. Code § 53.5(c) .......... 20, 21

Cal. Civ. Code § 1865(a) .......... 20

Cal. Civ. Proc. Code § 340(a) .......... 22

Cal. Civ. Proc. Code § 410.10 .......... 7

Cal. Penal Code § 631(a) .......... *passim*

Cal. Penal Code § 632(a) .......... *passim*

Cal. Penal Code § 637.6 .......... 12

**Court Rules**

Civil L.R. 7-3 .......... i

Fed. R. Civ. P. 8 .......... 23

Fed. R. Civ. P. 12(b)(2) .......... 6

Fed. R. Civ. P. 12(b)(6) .......... i, 6

**Other Authorities**

Godfrey Hotel website, https://www.godfreyhotelhollywood.com/ .......... 1

## MEMORANDUM OF POINTS AND AUTHORITIES

This case joins a wave of cookie cutter lawsuits under the California Invasion of Privacy Act ("CIPA") against various businesses and website owners implementing Google Analytics or Facebook's "Meta Pixel." The Meta Pixel and Google Analytics are pieces of code or "cookies" that Facebook and Google offer website operators to understand and measure interest in products and services, advertise to and better serve users. This lawsuit—and the scores of others like it—seek to misappropriate a decades-old wiretapping statute intended to prevent spies or other covert actors from wiretapping the telephone conversations of unsuspecting Californians into a cudgel to penalize website operators using routine and commonplace third-party code to better their websites.

Defendant Oxford[1] owns and operates the website for the Godfrey Hotel Hollywood. On its website for the hotel[2], Oxford uses the Booking Engine developed by Defendant Amadeus. Dion contends that Google and Meta Platforms, Inc. ("Facebook")—the parent company of the social media platform Facebook—are the purported wiretappers here, and rather than sue the alleged wiretappers, Dion alleges that Amadeus and Oxford aided and abetted Facebook's alleged wiretap by allowing Google and Facebook's cookies to intercept her communications with the Website without her knowledge or consent in purported violation of sections 631(a) and 632 of CIPA. Dismissal is warranted here for several distinct reasons.

*First*, as to Amadeus, Dion does not and cannot establish that Amadeus's Booking Engine on the Godfrey's nationally accessible website, or the alleged use of cookies on the Booking Engine, specifically targets California residents. Thus, Amadeus does not have sufficient minimum contacts with California to satisfy personal jurisdiction in this case.

---

[1] Defendant Oxford Hotels and Resorts LLC joins in all parts of this motion except Section III.

[2] https://www.godfreyhotelhollywood.com/ (the "Website").

*Second*, Dion's claims fail because she consented to the "*precise activity at issue in this case*" when she accepted Facebook's terms, which are a prerequisite to her use of the Facebook social media platform, and absent which the Meta Pixel would not function as to her. *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 956 (N.D. Cal. 2017) (emphasis added), *aff'd* 745 F. Appx. 8 (9th Cir. 2018).

*Third*, no basis for liability under Section 631(a) applies here. Oxford and Amadeus were undisputedly parties to the communication with Dion arising from her visit to the Godfrey Website, and therefore cannot be directly liable. *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("Only a third party can listen to a conversation secretly.") Nor can Amadeus be liable for Google's or Facebook's actions under an "aiding and abetting" theory because: (i) Dion does not plausibly allege any interception by Google as cookie information is only sent to Google if the website visitor has a Google account and she has not alleged that she is a Google account holder; (ii) Facebook itself did not violate CIPA because Dion agreed to Facebook's cookie consent agreement; and (iii) Facebook and Google did not "intentionally" or "willfully" wiretap Dion's communications with the Godfrey's website nor did they have the requisite mens rea to violate the statute. *See, e.g., B.K. v. Desert Care Network*, No. 223CV05021SPGPDX, 2024 WL 1343305, at *7 (C.D. Cal. Feb. 1, 2024) ("Because Section 631 requires defendants to act "willfully" or "intentionally," Cal. Penal Code § 631(a), the Court concludes that, as currently plead, Plaintiffs have failed to establish a predicate CIPA violation by Meta. Instead, Plaintiffs' allegations indicate that Meta either had no intention of receiving the data at issue or had some alternative mens rea not rising to the level of intentionality").

*Fourth*, Dion fails to state a claim under section 632 for the same reasons that her section 631(a) claim fails, and in addition, because section 632 applies only to "confidential" communications, and Dion had no "objectively reasonable expectation" that her visit to a hotel website would be private, particularly in light

of the consent she gave Facebook.

*Fifth*, Dion's claim is time-barred as it is premised on her visit from September 25, 2021, almost three years outside of CIPA's one-year limitations period. Her conclusory allegations regarding her delayed discovery of her claim cannot save her, as she was on inquiry notice of her claims as soon as she enrolled as a Facebook user and agreed to Facebook's terms, which thoroughly describe the operation of the Meta Pixel.

The Court should reject Dion's invitation to drastically expand a half century of CIPA precedent to expose website operators to criminal and civil liability for routine data transmittals that are part and parcel of the normal operation of a website.

## I. Statement of Facts

### A. <u>The Godfrey Website</u>

The Godfrey Hotel Hollywood (the "Godfrey") is located in Los Angeles and operates its own website. Compl. [ECF. No. 1] ¶¶ 2, 3. As part of its website, the Godfrey integrates the Defendant Amadeus Hospitality, Inc.'s ("Amadeus") booking platform (hereinafter, "Booking Engine"). *Id.* ¶ 4. When a website visitor makes a reservation on the Godfrey's website, they are redirected to Amadeus's Booking Engine, which allows prospective visitors to select their dates of stay and room type before providing payment information. *Id.* ¶¶ 6, 73. As part of the website design, the Godfrey has integrated the Meta Pixel and Google Analytics on its own website and on the Booking Engine. *Id.* ¶ 69. The Meta Pixel links a user's web activity to their own Facebook profile, which a user sets up to include their own pictures, personal interests, relationship status, and other details to share with friends online. *See id.* at ¶ 11.

Facebook sells advertising space to third parties based on a user's online activity—both within and outside of Facebook. *Id.* ¶ 47. Advertisers can use demographic and interest information to target advertisements to existing and

"lookalike" customers. *Id.* ¶ 48.

Users, like Dion, provide their first and last name to Facebook when creating accounts, as well as other personal information including their birthday and gender. *Id.* ¶ 45. When a user visits a website hosting the Meta Pixel, the user's browser will transmit information to Facebook related to the host website. *Id.* ¶ 55. To do this, Facebook discloses to its users through its terms that it provides cookies to third party websites for advertising and website analytics purposes. *Id.* ¶ 89. These cookies pair event data with a user's information, so that companies can later retarget consumers on Facebook. *Id.* ¶ 92. Upon certain interactions on a website, the Meta Pixel transmits data to Facebook, containing information about the user's visit. *Id.* ¶¶ 77-80.

**B. <u>Facebook's Terms of Service</u>**

Dion is a Facebook user and as such, consented to Facebook's terms of service, including its Privacy Policy and its customer Cookie Policy. *Id.* ¶¶ 27, 73.

Facebook's Privacy Policy provides details about the type of information collected by the Meta Pixel and how that information is used, as well as additional details regarding Facebook's policy governing the Meta Pixel.

First, the Facebook Privacy Policy advised Dion and other users of the type of information collected—explaining that Facebook "collect[s] the content, communications, and other information you provide when you use our Products," including post content, message content, metadata, type of content interacted with, purchases, hashtags used, and even the time, frequency, and duration of a user's visit. *See* Request for Judicial Notice ("RJN"), Ex. C, at 2-4. The Privacy Policy explicitly notifies Facebook users that the Meta Pixel tracks off-Facebook activity. *Id.* at 4.

Second, the Privacy Policy informed Dion and other users how that information is utilized—including expressly stating that collected information is used to "[p]rovide measurement and analytics services" and that "we also use the

information we collect to provide business services." *Id*. at 5. The Privacy Policy goes on to explain that Meta does not sell any personal information and requires partners and third parties to follow rules on how they can and cannot disclose a user's information. *Id*. at 8. In fact, the Privacy Policy advises users that Meta's business partners—including Oxford and Amadeus (as alleged by Dion)—may share "information about your activities" through the use of various tools, including the Meta Pixel, and expressly warns that Facebook receives this information "whether or not you have a Facebook account or are logged into Facebook." *Id*. at 4.

Third, the Facebook Terms of Service also contain a "Cookie Policy" which explains that cookies provide Facebook with the ability to personalize content, measure advertisement performance, and secure the user experience. *See* Ex. B, at 2-8. The Cookie Policy also informs users how to control their information and how Facebook uses that information. *Id.* at 6-7.

### C. Dion's Interaction with the Website

On September 25, 2021, Dion visited the Godfrey's website to book a hotel room using the same browsers on her computer and mobile device that she used to access her Facebook account. Compl. ¶¶ 21, 23. She completed the booking process. *Id.* ¶ 24. In booking the room, she provided her name, selected her destination, the dates of stay, and the type of room she wanted. *Id.* ¶ 27. Upon completion of the booking process, however, she also alleges that Defendants sent her Facebook ID, her IP address, and "other unique identifiers" to both Facebook and Google. *Id.* ¶¶ 27, 73. Among these identifiers are information about the purchase price, the hotel name, the number of beds, and the number of adults. *Id.* ¶ 79.

Dion filed her Complaint on August 2, 2024. *See generally*, Compl. She alleges that Oxford and Amadeus violated Penal Code sections 631(a) and 632. *Id*. On November 11, 2024, as required by Local Rule, the parties met and conferred to discuss the instant motion to dismiss.

## II. Legal Standards

### A. Rule 12(b)(2): Lack of Personal Jurisdiction

"[P]ersonal jurisdiction refers to a court's power over a particular defendant[.]" *Voltage Pictures, LLC v. Gussi S.A. de CV*, 92 F.4th 815, 824 (9th Cir. 2024). "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Where, as here, the motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts.'" *Id.* (quoting *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)).

### B. Rule 12(b)(6): Failure to State a Claim

"A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim lacks facial plausibility when there is no "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Courts do not have to "accept as true allegations that contradict exhibits attached to the [c]omplaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

By extension, the court does not have to accept as true allegations that are "contradicted by documents referred to in the complaint." *Leon v. County of San Diego*, 115 F. Supp. 2d 1197, 1200 (S.D. Cal. 2000). Instead, contents of documents incorporated by reference are presumed to be true for the purposes of a Rule 12(b)(6) motion. *Davis v. HSBC Bank*, 691 F.3d 1152, 1160 (9th Cir. 2012). These

documents may be considered when "the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *see also A.S. v. SelectQuote Ins. Servs.*, No. 3:23-CV-02258-RBM-MSB, 2024 WL 3881850, at *3-5 (S.D. Cal. Aug. 19, 2024) (considering internet privacy policies under the incorporation by reference doctrine, or alternatively through judicial notice).

**III. This Court Does Not Have Personal Jurisdiction Over Amadeus.**

Amadeus—as a provider of a cloud-based service used on the Godfrey's website—is not subject to specific personal jurisdiction in this state because it did not expressly aim its conduct towards California. *See Walden v. Fiore*, 571 U.S. 277, 286-88 (2014); *accord Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023) (no specific personal jurisdiction over a defendant that provided an e-commerce payment platform to a California retailer that sold to a California customer, because the defendant's platform was indifferent to the location of end-users), *op. vacated and pet. for reh'g en banc granted*, 101 F.4th 706 (9th Cir. 2024).

"In exercising personal jurisdiction, a federal district court is constrained by the Fourteenth Amendment's Due Process Clause and the long-arm statute of the state in which it sits." *Impossible Foods, Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023). California's long-arm statute is coextensive with federal due process requirements. *Schwarzenegger*, 374 F.3d at 800-01; Cal. Civ. Proc. Code § 410.10. Personal jurisdiction can be either general or specific. *Impossible Foods, Inc.*, 80 F.4th at 1086. The former—general jurisdiction—applies only when a defendant is essentially at home in the State, which for a corporate defendant are its state of incorporation and its principal place of business. *Id.* In determining the latter—specific jurisdiction—the plaintiff has the burden of proving: (1) that the defendant purposefully directed its activities to the forum or purposefully availed

itself of conducting activities in the forum, and (2) that the claim relates to the defendant's forum-related activities. *Id.* at 1086-87. Once the plaintiff proves those two prongs, the defendant must then show jurisdiction would be unreasonable. *Id.*at 1087. The plaintiff's claim must relate to the forum contacts for specific personal jurisdiction to exist. *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262 (2017). "But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 571 U.S. at 286.

General personal jurisdiction does not apply here, as Amadeus is incorporated in Delaware and is headquartered in New Hampshire. Compl. ¶ 17.

With regard to specific personal jurisdiction, Amadeus did not purposefully direct its activities to California, but instead provided access to its booking engine to potential hotel guests regardless of where those potential guests were located. In cases sounding in tort, as here, whether purposeful direction exists depends on a three-part "effects" test which "requires that 'the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state.'" *Mavrix Photo, Inc. v. Brand Techs, Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2011)).

In internet cases, the express aiming requirement is not satisfied when the defendant does not *specifically* target users within the forum. *See AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210-11 (9th Cir. 2020) (analyzing federal long-arm rule). The defendant in *AMA Multimedia* was an individual living in Poland, who ran adult entertainment websites that would geolocate users to provide them with advertisements in their language. *Id.* at 1204. The United States also formed the website's largest market, as 19.21% of its visitors were based in the United States. *Id.* at 1205. However, the Ninth Circuit panel held that despite the large proportion of users in the United States, the large proportion of users *outside* the United States

indicated that the defendant did not expressly aim its website into the country. *Id.* at 1210-11. In contrast, the defendant in *Mavrix Photo, Inc.*, was a celebrity gossip site, which while not restricted to California, was subject to personal jurisdiction in the state because it specifically cultivated the California market by selling advertising space to California companies and directing advertisements to California residents to develop a large California user base interested in California-centric entertainment industry. 647 F.3d at 1230. The court concluded that due to the website's subject matter, and the value of the California market, the website aimed to establish a substantial California audience for its commercial gain. *Id.*

Courts dealing with similar circumstances of interactive websites offering commerce to anyone able to access the Internet have routinely found personal jurisdiction lacking. *See, e.g., Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 868 (S.D. Cal. 2023) (no personal jurisdiction where California customers could access and conduct commerce on nationally accessible website absent connection between the forum and the specific claims at issue); *Massie v. Gen. Motors Co.*, No. 1:20-CV-01560-JLT, 2021 WL 2142728, at *5 (E.D. Cal. May 26, 2021) (same); *Licea v. Caraway Home Inc.*, 655 F. Supp. 3d 954, 970 (C.D. Cal. 2023) (same)

In *Mikulsky*, the court dismissed a case alleging violations of CIPA for lack of specific jurisdiction even though the plaintiff argued that Noom "intentionally operates its business in California through its interactive website." 2023 WL 4567096, at *7. But the complaint "fail[ed] to include a single allegation" showing how Noom's website "is targeted at California," or that its tracking software at issue "specifically targets California users." *Id*. at *8. As such, plaintiff fell "far short" of establishing personal jurisdiction over the defendant in California. *Id*. at *8-9.

In reaching its decision in *Mikulsky*, the court cited favorably to *Massie*, which held that General Motors was not subject to personal jurisdiction in California simply because the plaintiff argued General Motors had a substantial customer base in California and knew that Californians frequently accessed its

website. *Massie*, 2021 WL 2142728, at *5-6. The *Massie* court held that "operation of broadly accessible websites does not constitute the type of minimum contacts with the forum needed for specific personal jurisdiction," even over claims related to information collected on that website. *Id*. at *6. After all, if the rule were otherwise, and such allegations were sufficient for specific jurisdiction, then "'every online advertiser worldwide [could] be haled into California.'" *Id*. (quoting *Matus v. Premium Nutraceuticals, LLC*, 715 F. App'x 662, 663 (9th Cir. 2018)); *see also Caraway Home*, 2023 WL 1999496, at *9-10 (finding *Massie*'s "thorough reasoning" to be "instructive," and dismissing CIPA chat box claims because "[w]ithout facts showing [the defendant] specifically targeted California, the operation of an internationally accessible website is insufficient to serve as a ground for personal jurisdiction").

Here, Plaintiff's purported injury just happened to occur in California. Amadeus operates a cloud-based Booking Engine that allows Amadeus's hotel customers to make their rooms available for booking by potential visitors from anywhere in the world. *See* Compl. ¶ 5. A user would experience the same Booking Engine resulting in the same allegedly unauthorized disclosure from *anywhere*. *See Walden*, 571 U.S. at 290. That a portion of its users access the website from the state does not mean Amadeus specifically directed its online booking engine into the forum as opposed to the rest of the world. *See AMA Multimedia, LLC*, 970 F.3d at 1210. Unlike *Mavrix Photo*, which targeted a California-centered celebrity industry, and anticipated a large California viewer base, Amadeus plays a passive role on the Godfrey's website, which is targeted at customers who might travel to Los Angeles, and intrastate users are the logical outlier. At bottom, Plaintiff cannot show how Amadeus itself specifically targeted internet users in the California market.

It is also of no significance that Amadeus's co-defendant is a hotel physically located in California. Although Amadeus contracted with a California-based hotel,

it did so to provide booking engine services to the hotel, which in turn, makes bookings available to customers globally. Further, in the context of an internet privacy claim, like here, where the plaintiff is asserting that the website disclosed information at the time of booking, the alleged wiretapping is not related to the hotel's real property location at all and cannot be considered as part of the minimum contacts analysis. *See Bristol-Myers Squibb Co.*, 582 U.S. at 262, 268 (finding the fact that Bristol Meyers Squibb contracted with a California distributor to sell the products at issue insufficient to establish personal jurisdiction within the state); *see also Heiting v. Marriott Int'l, Inc.*, No. 2:23-cv-10822-JLS-MAA, 2024 WL 3751276, at *4 (C.D. Cal. Aug. 5, 2024) (a hotel chain's broader business contacts and operations in California could not create specific personal jurisdiction as the contacts were unrelated to the plaintiff's online privacy CIPA claim). Specifically, Amadeus's *contract* with the Godfrey was not the same type of contacts—or related to those—that gave rise to plaintiff's complaint; a separate transaction between the Godfrey and Dion was. *See Global Commodities Trading Grp. Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1109 (9th Cir. 2020) ("Personal jurisdiction over any individual who acts as an agent of a third party must be assessed on the individual's actions alone.").

Accordingly, the Court lacks personal jurisdiction over Amadeus and should grant Amadeus's motion to dismiss.

## IV. Dion Consented to the "Precise Conduct" at Issue Here.

Dion's CIPA claim fails at the threshold because she does not plausibly allege that any of her communications were accessed "without [her] consent." Cal. Penal Code § 631(a). Section 631(a) applies only to an "unauthorized" interception made "without the consent of all parties to the communication." *Id.*; *see also Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954, 956 (N.D. Cal. 2017) (dismissing CIPA claim because plaintiffs' consent to Facebook's policies disclosing the "precise conduct at issue" "bar[red]" their claims and "[n]o further allegations could allow

[them] to bring claims arising out of conduct which they consented to") (citation omitted), aff'd, 745 F. App'x 8 (9th Cir. 2018). "Where lack of consent is an express element of a claim, as is the case here, it must be alleged in the complaint" and may be challenged on a motion to dismiss using documents incorporated by reference. *Garcia v. Enter. Holdings, Inc.*, 78 F. Supp. 3d 1125, 1136 (N.D. Cal. 2015) (dismissing CIPA § 637.6 claim).

Here, as part of using Facebook, Dion consented to—and her Complaint reflects—three different policies: Facebook's Terms of Service, Privacy Policy, and Cookie Policy. Compl. ¶ 110. She agreed to these policies in exchange for her free use of the platform, as explained in the terms of serviced referenced throughout her Complaint:

> Advertisers, app developers, and publishers can send us information through Facebook Business Tools they use, including our social plug-ins (such as the Like Button), Facebook Login, our APIs and SDKs, or the Facebook pixel. These partners provide information about your activities off Facebook—including information about your devices, websites you visit, purchases you make, the ads you see, and how you use their services.

RJN, Ex. C, at 5 (Facebook Privacy Policy (last revised Jan. 11, 2021)).

> We use the information we have about you-including information about your interests, actions and connections-to select and personalize ads, offers and other sponsored content that we show you.

*Id.* at 5.

> We provide advertisers with reports about the kinds of people seeing their ads and how their ads are performing, but we don't share information that personally identifies you (information such as your name or email address that by itself can be used to contact you or identifies who you are) unless you give us permission.

*Id.* at 8.

> Instead of paying to use Facebook and the other products and services we offer, by using the Facebook Products covered by these Terms, you

> agree that we can show you ads that businesses and organizations pay us to promote on and off the Facebook Company Products. We use your personal data, such as information about your activity and interests, to show you ads that are more relevant to you.

RJN, Ex. D, at 4 (Facebook Terms of Service (last revised Oct. 22, 2020)).

These policies make clear to Facebook users that Facebook has the ability to collect and track information regarding the user's online activity. This extends to activity regardless of whether the user is logged in. Compl. ¶ 112.

Taken together, Dion clearly consented to the conduct at the center of her Complaint—sharing her Facebook profile information *with Facebook itself*.

## V. Dion Fails to State a Claim Under CIPA.

Both of Dion's CIPA claims fail because she cannot identify any confidential content that was shared with Facebook or Google or overcome the fact that she consented to social media terms and conditions when she created her profile. Further, the information that she does allege was collected is merely non-actionable record information and falls outside the scope of the statutory privacy protections under California Civil Code section 53.5.

### A. Dion's Section 631 Claim Fails

Dion cannot establish any plausible basis for liability under any prong of Section 631(a). Section 631(a) prohibits "three distinct and mutually independent patterns of conduct: [(1)] intentional wiretapping, [(2)] willfully attempting to learn the contents or meaning of a communication in transit over a wire, and [(3)] attempting to use or communicate information obtained as a result of engaging in either of the previous two activities." *Tavernetti v. Superior Court*, 22 Cal. 3d 187, 192 (1978). A fourth basis of liability exists for anyone "who aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the" other section 631(a) prongs. Cal. Penal Code § 631(a); *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1134 (E.D. Cal. 2021).

The first three bases for potential liability fail because even a cursory reading of the allegations in Plaintiff's complaint confirms that they do not apply as a result of direct limitations on the type of technology and the parties involved. Any potential basis of liability under the fourth clause of section 631(a)—which targets aiding others in unlawfully wiretapping—fares no better because the statute requires a specific intent in working with the third party to collect the content of the communication.

1. Dion's allegations related to the first three clauses fall outside the scope of the statute.

The first clause is limited to "unauthorized connection[s] . . . with any telegraph or telephone wire . . . ." Cal. Penal Code § 631(a). This is strictly construed as limited to phone calls. *See Mastel*, 549 F. Supp. 3d at 1135 (finding the first clause inapplicable to non-telephone or telegraph communications, even when the plaintiff used an iPhone because it functioned as a computer when used to browse the Internet). It is inconsequential that Dion alleges that she visited the website using a mobile device. Compl. ¶ 23. Doing so does not bring her communications within the scope of the first clause, and therefore there is no basis for liability under it. *Mastel*, 549 F. Supp. 3d at 1135.

Parties to a communication cannot be liable under the second clause. *Swarts v. Home Depot, Inc.*, 689 F. Supp. 3d 732, 744-45 (N.D. Cal. 2023); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 831 (N.D. Cal. 2021) ("a party to a communication can record it (and is not eavesdropping when it does)"). Dion alleges that she was redirected to and used Amadeus's Booking Engine to complete her booking. Compl. ¶¶ 5, 6. As a result, Amadeus was a party to Dion's internet communication and cannot be liable.

The third clause is derivative of the first two, and necessarily fails here as a matter of law. *In re Google Assistant Privacy Litig.*, 457 F. Supp. 3d 797, 827 (N.D. Cal. 2020) ("Plaintiffs must establish that the information at issue . . . was obtained

through a violation of the first or second clauses. Because Plaintiffs have not done so, they also have failed to plead a violation of the third clause of § 631(a).”).

2. A claim under the fourth clause of section 631 fails because Dion cannot plead requisite intent or overcome her own consent.

Dion’s claim under the fourth clause—which applies when a defendant “aids, agrees with, employs, or conspires with any person or persons to *unlawfully* do, or permit, or cause to be done any of the acts or things mentioned above this section.” Cal. Penal Code § 631(a)—likewise fails because she does not allege how Facebook or Google intended to act unlawfully. In order to be liable for aiding and abetting under the fourth prong of section 631(a), Dion must establish that a third-party has predicate liability.

Intent is an element of Dion’s CIPA claim. Section 631(a) requires a showing that the Facebook and Google were “intentionally” wiretapping. *See* Cal. Penal Code § 631(a); *Tavernetti*, 22 Cal. 3d at 192. Another CIPA section relating to eavesdropping, Section 632(a), contains an identical intent requirement, which courts have interpreted to require action “with the purpose or desire of” engaging in the prohibited conduct or “with the knowledge to a substantial certainty” that the prohibited conduct will occur. *People v. Superior Court (Smith)*, 70 Cal. 2d 123, 133-34 (1969); *see also People v. Buchanan*, 26 Cal. App. 3d 274, 288 (1972) (noting § 631(a) contains intent requirement). “It is a general rule of statutory construction to construe words or phrases in one statute in the same sense as they are used in a closely related statute pertaining to the same subject.” *Cal. Soc’y of Anesthesiologists v. Brown*, 204 Cal. App. 4th 390, 403 (2012). Accordingly, Section 631(a)’s intent requirement should be construed to the same effect.

Because CIPA requires a showing that the defendant affirmatively desired to wiretap, the mere possibility that the Meta Pixel or Google Analytics might be used by third parties to wiretap is insufficient to establish intent. *See, e.g., Lozano v. City of Los Angeles*, 73 Cal. App. 5th 711, 727-28 (2022) (the “deploy[ment of]

recording devices that might happen" to record confidential conversations is insufficient to establish intent under section 632); *Federated Univ. Police Officers' Ass'n v. Regents of Univ. of Cal.*, No. SACV1500137JLSRNBX, 2015 WL 13273308, at *10 (C.D. Cal. July 29, 2015) (defendant did not intentionally violate section 632 by selling and installing an alleged recording device). The mere unintentional or inadvertent receipt of information likewise cannot support a CIPA claim; data received "by chance" is not intentionally received data. *Smith*, 70 Cal. 2d at 133. As the California Supreme Court explained in connection with a section 632 eavesdropping claim, "a person might intend to record the calls of wild birds on a game reserve and at the same time accidentally pick up the confidential discussions of two poachers. To hold the birdwatcher punishable under [CIPA] for such a fortuitous recording would be absurd." *Id.*; *see also Buchanan*, 26 Cal. App. at 287-88 (finding no intent under section 632 where switchboard operator "inadvertently" overheard a telephone conversation).

It is fatal, then, that Dion does not plausibly allege that Facebook or Google *intended* to wiretap a conversation without her consent. There is no dispute that the companies created the cookies and made them freely available to third parties subject to its terms. Compl. ¶ 54. But just as selling and installing a recording device does not violate CIPA, *see Federated Univ. Police Officers' Ass'n*, 2015 WL 13273308, at *10, creating the Meta Pixel or the Google tracking tools and making them available to others who choose where and how to install it is not the intentional conduct that CIPA prohibits.

Facebook cannot have intentionally wiretapped Dion's communications where Dion expressly consented to sharing information with Facebook. "When individuals sign up for a Facebook account, they agree to Meta's Terms of Service, Data Policy, and Cookies Policy. These policies are contractually binding on both Meta and its users." *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 786 (N.D. Cal. 2022). "Courts consistently hold that terms of service and privacy

policies . . . can establish consent to the alleged conduct challenged under various states' wiretapping statutes and related claims." *Silver v. Stripe, Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. July 28, 2021).

Moreover, as Dion notes at length in her Complaint, Facebook "require[s]" third parties "to have lawful rights to collect, use and share [individuals'] data before providing any data to [Meta]." RJN, Ex. C at 4; Compl. ¶¶ 113, 115, 120. Facebook also requires third parties that use the Pixel to warrant that they have "all of the necessary rights and permissions and a lawful basis . . . for the disclosure of" data and to "represent and warrant that [they] provided robust and sufficiently prominent notice to users regarding" data "collection, sharing and usage." RJN, Ex. E §§ 1(e), 3(c). As discussed herein, Dion expressly consented to Facebook's receipt of the data at issue in her Complaint. But to the extent she is correct that the information collected falls outside of the scope of her consent and to the extent that Facebook did receive protected information, any receipt of that data was not at its request and, in fact, expressly prohibited by its terms since the information would be outside Facebook's intended scope. Its alleged receipt of information under such circumstances cannot support a CIPA claim. *See Smith*, 70 Cal. 2d at 133.

As with Facebook's terms, Google's Privacy Policy at the time Dion booked her stay at the Godfrey disclosed that it collected a user's name, content interactions, and "activity on third-party sites and apps that use our services." RJN, Ex. F at 4, 17, 18. Information shared with Google is used for business services, such as advertising and analytics. *Id.* at 6, 7.

Any theory regarding Google can be dispensed under the plausibility standard alone. Taken at face value, Plaintiff's allegations fail to establish that information was actually sent to Google. As alleged in her Complaint, information is only sent to Google via its cookies if a website visitor has a Google account. Compl. ¶¶ 99-100. But nowhere in Dion's complaint does she allege she had a Google account. Consequently, her Complaint lacks any basis for fourth-prong

liability as to Google. *See Mastel*, 549 F. Supp. 3d at 1136 ("There are simply no allegations in the complaint that reasonably give rise to the inference that the [Defendant] ever read or learned the contents of a communication while the communication was in transit." (citing *Iqbal*, 556 U.S. at 678)). Even if she did attempt to amend her complaint, such amendment would be futile, as it would necessarily show that she consented to Google's privacy terms, which—like Facebook's—would put her on notice that websites were collecting information, and her agreement to provide Google with personal information (including her name), and "activity on third-party sites and apps that use [Google's] services." RJN, Ex. F at 4, 17, 18; *c.f. supra* § IV.

Dion also fails to establish Defendants' intent to aid and abet any wiretapping activity. While CIPA "does not necessarily incorporate the common law requirement for aiding and abetting," there is "other language in § 631(a)'s fourth clause [that] does require some level of knowledge and intent." *Smith v. Yeti Coolers, LLC*, No. 24-cv-01703, 2024 WL 4539578, at *4 (N.D. Cal. Oct. 21, 2024). Specifically, the "clause prohibits a defendant from aiding, agreeing with, or employing a third party '*to* unlawfully do, or permit, or cause' the third party to act in violation of the wiretapping statute. That language indicates that the defendant must be acting with the third party *in order to* have the third party perform acts that violate the statute." *Id.* (emphasis in original). In *Yeti Coolers*, the Plaintiff failed to state a claim under Section 631(a) because he merely alleged the defendant was aware of the third-party use of information and that the defendant assisted in intercepting and storing sensitive information. *Id.* at *5. However, the allegations were insufficient to allow the court to infer that the defendants knew that the third-party services were based on illegal conduct. At best, Plaintiff alleges that Amadeus did not disclose any collection and allowed Facebook and Google to collect the information for advertising purposes. Nothing in the complaint even remotely suggests an intent to violate the other three clauses.

In short, Dion must do more than simply assert intent in order to establish liability under CIPA; she must allege specific circumstances that make Facebook's intent to wiretap plausible. *See Vartanian v. VW Credit, Inc.*, No. 2:11-CV-10776-SVW-RZ, 2012 WL 12326334, at *2 (C.D. Cal. Feb. 22, 2012) (to properly plead section 632 eavesdropping claim, plaintiff must allege "specific factual circumstances that make plausible Defendant's intent to record a confidential communication"); *Lozano*, 73 Cal. App. 5th at 727-28 (intent not established where defendant "deploy[ed] recording devices that might happen" to record confidential information). She has not done so, and therefore his claim should be dismissed with prejudice.

**B. <u>Dion Lacked an Expectation of Privacy for Her Section 632 Claim</u>**

Dion's second cause of action also fails because the information is not protected under Section 632. Already, she faces an uphill battle for establishing an expectation of privacy for her internet communications. In an attempt to avoid the presumption against her, she purports to invoke (but misreads) California's "Guest Record" statute, Civil Code section 53.5, ignoring the definition of "guest records" and the statutory carve-out that allows businesses to share information for business purposes. To make matters worse, throughout her complaint she references the limitations on Facebook's terms. These references are misguided and benefit Defendants only, as the relevant terms dispel any expectation of privacy.

Section 632 prohibits "intentionally and *without the consent* of all parties to a *confidential* communication, us[ing] an electronic amplifying or recording device to eavesdrop or record the confidential communication . . . ." Cal. Penal Code § 632(a) (emphasis added). A communication is confidential only if a party has "an objectively reasonable expectation that the conversation is not being overheard or recorded." *Rodriguez v. Google LLC*, No. 20-CV-4688, 2021 WL 2026726, at *7 (N.D. Cal. May 21, 2021). There is a presumption that internet-based communications are not confidential within the meaning of Section 632. *Id.*

California does not recognize an expectation of privacy regarding internet communications. *See People v. Stipo*, 195 Cal. App. 4th 664, 669 (2011) ("Internet users have no expectation of privacy in . . . the websites they visit because they should know that this information is provided to and used by Internet service providers . . . .").

The relationship between the parties is informative on whether an expectation of privacy exists. *See Swarts*, 689 F. Supp. 3d at 747. In *Swarts*, the plaintiff had exchanged messages with Home Depot through an online chat feature. *Id.* at 737. He alleged that Home Depot recorded those messages, and provided them to third-party service providers, including Google, and sent "live session data" to another provider. *Id.* at 738. In dismissing the section 632 claim, the court distinguished healthcare information cases like *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, because the customer service relationship between the retailer and the customer did not create the same expectation of privacy. *Id.* The same distinction applies here too. Cases involving healthcare information carry an elevated expectation of privacy rooted in patient-provider relationship. *Id.*

Dion's theory of confidentiality depends on the construction of California Civil Code section 53.5, which prohibits disclosure of a "guest record" to third parties. Cal. Civ. Code § 53.5(a). The statute goes on to define a list of items which constitute a guest record, including "any record that identifies an individual guest, boarder, occupant, lodger, customer, or invitee, including, but not limited to, their name, social security number or other unique identifying number, date of birth, location of birth, address, telephone number, driver's license number, other official form of identification, credit card number, or automobile license plate number." Cal. Civ. Code § 53.5(c).

In a separate section of the Civil Code, California defines a hotel "guest" as "specifically limited to, an *occupant* of a hotel . . . ." Cal. Civ. Code §1865(a) (emphasis added). While not controlling under section 53.5, this definition is

indicative of the state legislature's intent to limit the scope of section 53.5 to protect only the information of physical occupants of the hotel. *See Dieckmann v. Superior Court*, 175 Cal. App. 3d 345, 356 (1985) (attributing the same meaning to terms used in related statutes).

Here, Plaintiff's reading of Section 53.5 goes too far. The "guest records" she claims, including "her name, her destination, the dates of her stay, the type of room she stayed in, and the rate of that room," Compl. ¶ 27, only have one overlap with the statutory definition: *her name*. This is not enough to form the basis of a Section 632 claim, particularly where she has *already provided* Facebook with her "first and last name, along with [her] birthday and gender." Compl. ¶ 45. The other "PII" she claims is completely unrelated to the other categories of protected information. *See* Cal. Civ. Code §53.5(c).

Even then, her complaint only alleges that she made a reservation; there is no allegation that she actually stayed at the Godfrey. *See* Compl. ¶ 21. As a result, her information is not protected by section 53.5. And if she did stay there, the relationship between Amadeus and prospective hotel guests does not carry the same expectation of privacy as those in CIPA claims involving healthcare websites. Instead, the relationship at issue is more like the customer service relationship in *Swarts*. 689 F. Supp. 3d at 747. Communications with travel agents are not inherently confidential, and neither should communications with a booking platform be.

Further, Plaintiff has no expectation of privacy where the statute that purports to protect guest records carves-out disclosure to third-party contractors. Cal. Civ. Code § 53.5(i). In this instance, the statute protects *business*, as section 53.5 "shall not be construed to prevent a private business from providing business records containing a guest's or passenger's name . . . to a third-party service provider that the business contracts with for business-related services." Cal. Civ. Code § 53.5(i); *see also Dieckmann*, 175 Cal. App. 3d at 353 ("Terms such as 'shall' and 'must'

are generally presumed to have intended mandatory meaning . . . ."). Facebook's Business Tools, including the Meta Pixel, are bits of code that advertisers can integrate into their websites. Compl. ¶ 51. Facebook uses event data to help websites on advertising campaigns and in targeting potential customers. *Id.* ¶¶ 65, 66. These tools are integrated on the Amadeus booking engine. *Id.* ¶ 69. Not only do Plaintiff's allegations fall squarely within this statutory carve-out as the alleged disclosure was for business purposes, but this statutory exception further diminishes any expectation of privacy she might have had because "[p]laintiffs are presumed to know the law and its requirements." *Crawford-Hall v. United States*, No. 2:17-CV-1616-SVW-AFM, 2018 WL 5816117, at *6 n.4 (C.D. Cal. May 31, 2018).

Finally, Plaintiff's own admitted use of Facebook eliminates any remaining doubt about whether she had an expectation of privacy because she expressly consented to Facebook's use of her information (*see* Section IV above). *See Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994) (A plaintiff must "have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant.").

### C. <u>Dion's Claim is Time-Barred</u>

CIPA has a one-year statute of limitations, *Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *11 (N.D. Cal. Aug. 30, 2019) (citation omitted), and the cause of action accrues when "the cause of action is complete with all of its elements," *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806 (2005). Any violations accruing before August 2, 2023, are therefore time-barred. From the face of the Complaint, Dion has failed to bring her claims within the applicable one-year statute of limitations under Cal. Civ. Proc. Code § 340(a), since her alleged interaction with the Website was on September 25, 2021. Compl. ¶ 21.

Dion cannot rely on the delayed discovery rule to extend the limitations period for her claims. The discovery rule requires that a plaintiff plausibly allege

"(1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *Fox*, 35 Cal. 4th at 808. Dion bears the burden of pleading each requirement but fails to do so here. *See Plumlee v. Pfizer*, Inc., No. 13-CV-00414-LHK, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014).

Although she alleges in conclusory fashion that she "did not know" that her information was being collected by the Meta Pixel, such "general conclusions" and conclusory statements that plaintiff "could not reasonably have made an earlier discovery[] are useless." *Anderson v. Brouwer*, 99 Cal. App. 3d 176, 182 (1979); *see also Chione v. Medtronic, Inc.*, No. 14-CV-01043-BAS RBB, 2015 WL 2151889, at *4 (S.D. Cal. May 7, 2015). This is particularly true where her allegations that she could not have reasonably made an earlier discovery are implausible given that Facebook's terms of use put her on direct notice regarding the operation of the Meta Pixel. As Dion herself admits throughout the Complaint, Facebook's Privacy Policy further elaborates that third parties "receive your data when you visit or use their services or through third parties they work with." RJN, Ex. C, at 7. And Facebook's Off-Facebook Activity tool allows users to view a summary of information Facebook has received about their activity from third parties. RJN, Ex. B, at 6-7.

The delayed discovery rule is subject to Rule 8 pleading standards. *Bonds v. Nicoletti Oil, Inc.*, No. CV-F-07-1600 OWWDLB, 2008 WL 2233511, at *14 (E.D. Cal. May 28, 2008). However, in the Complaint all Dion includes are conclusory allegations that she "did not know (and had no way of knowing) that her Private Information was intercepted and unlawfully disclosed because Defendants kept this information secret." Compl. ¶¶ 126, 127. At most, she alleges that the embedded code was written in JavaScript. *Id.* ¶ 57. She does not allege any diligence on her part at any point in time since she visited the websites more than *three years ago* in September 2021. *Id.* ¶ 21. Nor does she attempt to overcome the fact that she was on notice through Facebook's policies. As a result, she fails to state that her claim

is timely.

## VI. <u>Conclusion</u>

For the reasons stated, Amadeus respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Complaint in its entirety with prejudice.

Dated: November 15, 2024

DLA PIPER LLP (US)

By: /s/ David B. Farkas
DAVID B. FARKAS
OLIVER M. KIEFER
ALBERTO J. CORONA
MATT DANAHER

*Counsel for Defendant*
*AMADEUS HOSPITALITY, INC. d/b/a TRAVELCLICK*

Dated: November 15, 2024

CONSTANGY, BROOKS, SMITH & PROPHETE, LLP

By: /s/ David A. Yudelson
DAVID A. YUDELSON

Counsel for Defendant OXFORD HOTELS AND RESORTS, LLC f/b/a THE GODFREY HOTEL HOLLYWOOD

**ATTESTATION OF CONCURRENCE IN FILING (L.R. 5-4.3.4(a)(2)(i))**

I, David Farkas, am the ECF user whose ID and password are being used to file the foregoing Motion to Dismiss. Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all signatories listed above, and on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Dated: November 15, 2024

*/s/ David B. Farkas*
DAVID B. FARKAS